IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHNNY PAUL SUTHERLIN | § | |
| v. | § | CIVIL ACTION NO. 6:17cv234 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Petitioner Johnny Paul Sutherlin, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court referred the case to United States Magistrate Judge K. Nicole Mitchell pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Sutherlin was convicted of four counts of aggravated sexual assault and one count of aggravated kidnapping, enhanced by prior felony convictions involving driving while intoxicated. The facts of the case showed Sutherlin entered the apartment of his niece (who was identified in the state court records by the pseudonym of "Marilyn Moore"), told her "shut up bitch or I'll kill the boy in the next room," held a box cutter to her face, tied her up, and sexually assaulted her. He was found guilty and sentenced to life imprisonment on each count, running concurrently.

Sutherlin's conviction was affirmed on direct appeal by the Twelfth Judicial District Court of Appeals and his petition for discretionary review was refused by the Texas Court of Criminal Appeals. *Sutherlin v. State*, slip op. no. 12-13-00374-CR, 2015 WL 3878083 (Tex.App.-Tyler, June

24, 2015, pet. ref'd). Sutherlin also filed a state habeas application, which was denied without written order on September 21, 2016.

**II. The Federal Habeas Corpus Petition**

Sutherlin filed his federal habeas corpus petition on April 25, 2017. In this petition, Sutherlin asserted that he received ineffective assistance of counsel from his attorney, William House, in that House: (1) failed to investigate the warrants and supporting affidavits; (2) failed to review evidence in the form of electronic .avi files; (3) failed to object to inflammatory language in the indictment; (4) asked an impermissible question at voir dire; (5) walked away from voir dire after the impermissible question was disallowed; (6) failed to object to inflammatory language in the jury charge; (7) failed to perfect the record; (8) made an ineffective closing argument at punishment; and (9) committed cumulative error. Sutherlin also complained that the Twelfth Court of Appeals erred in ruling that the trial court did not abuse its discretion by refusing to allow House to conduct an adequate voir dire concerning the range of punishment.

Together with his petition, Sutherlin also filed a motion which he styled as a "motion to stay and abate," but which in fact asked the Court to excuse the exhaustion requirement as to his unexhausted claims, listed as (1) and (2) above. In this motion, Sutherlin recounted difficulties which he said he had experienced in obtaining his case file and documents from counsel. He contended that these difficulties prevented him from presenting his first two claims to the state court in a timely manner. Instead, he sought to add them as an addendum to his state habeas application, but he was not allowed to do so. Sutherlin's motion asked that the Court "review his unexhausted claims without sending them back into the state court process because that process would prove a waste of precious time."

**III. The Report of the Magistrate Judge and the Objections**

The Magistrate Judge ordered the Respondent to answer the petition, and Sutherlin filed a response to the answer. After review of the pleadings and the state court records, the Magistrate Judge issued a Report recommending that the petition for habeas corpus relief be denied.

A. The Unexhausted Claims

The Magistrate Judge observed that Sutherlin's first two claims were not raised in his state habeas application, but were presented for the first time in a supplement or addendum to this application which was not filed until after the state application had been denied. The Magistrate Judge concluded, citing *Wheat v. Johnson*, 238 F.3d 357, 360-61 (5th Cir. 2001), that Sutherlin's state court remedies on these claims had not been exhausted.

Beyond the matter of exhaustion, the Magistrate Judge also determined that Sutherlin's claims of ineffective assistance on these two points lacked merit. Sutherlin argued that House failed to investigate the warrants and supporting affidavits, but he pointed only to minor discrepancies between what Moore told Detective Cathy Weber and what she said at trial. The Magistrate Judge also found that Sutherlin failed to show the trial court would have granted a request for a hearing on allegedly false statements in the warrant affidavit nor that Sutherlin would have prevailed had such a hearing been conducted. Similarly, the Magistrate Judge stated that Sutherlin failed to show what House would have discovered by opening the .avi files or how this information would have affected the outcome of the trial.

In his objections, Sutherlin argues that his "first half 11.07" state habeas application was filed in the Court of Criminal Appeals on July 29, 2016, with no answer from the State and no findings of fact or conclusions of law. Five days later, he states that he filed a motion for stay and abeyance to compel such findings and conclusions, but this was denied 27 days later.

In the meantime, Sutherlin contends that he was preparing an addendum, which he terms his "second half 11.07," based on newly discovered evidence. He received a letter from his mother saying that his state habeas application may have already been denied. He contacted the Court of Criminal Appeals and received a letter stating that his habeas application had been denied on September 21, 2016. He filed a motion for extension of time in which to file a motion for rehearing, but received no response. He then filed a motion for leave and a brief within the time period he had requested in his motion for extension of time.

Sutherlin asserts that because he was near the end of his federal limitations period, he decided to adopt the position that because the state court had refused to answer the first half of his habeas application, it would prove futile to submit any documents into the state court. He thus opted to proceed in federal court. Sutherlin argues that because the state court refused the "first half" of his 11.07 habeas application, it was futile to go back to state court for the "second half." He contends that he exercised appropriate diligence and gave the State a fair opportunity to review his claims, but the State chose to look the other way.

The record shows that Sutherlin filed his state habeas application on June 17, 2016, six months after his petition for discretionary review was denied. On August 4, 2016, Sutherlin wrote a letter to the Court of Criminal Appeals asking about his writ (docket no. 13-4, p. 1). On August 15, 2016, Sutherlin filed a motion for abeyance in the Court of Criminal Appeals. (Docket no. 13-7, p. 4). His state habeas application was denied without written order on September 21, 2016.

On February 27, 2017, Sutherlin filed in the Court of Criminal Appeals a motion for extension of time in which to file a motion for rehearing, following this with the motion for rehearing on March 2, 2017. (Docket no. 13-5, pp. 1-7). The motion for rehearing was dismissed on March 8, 2017, pursuant to Tex. R. App. P. 79.2(d), which provides that a motion for rehearing of an order denying habeas corpus relief may not be filed. The document to which he refers as "the second half" of his state habeas petition was never properly filed in state court, and so the Magistrate Judge correctly determined that the claims raised in this document were not exhausted. *See Larry v. Dretke*, 361 F.3d 890, 894 (5th Cir. 2000). Sutherlin's objection on this point is without merit.

Turning to the merits of his first two claims, Sutherlin asserts that he identified "35 lies" in the five warrant affidavits completed by Detective Weber. He asserts that had counsel investigated, he would have had enough information to offer a "prima facie showing" for a *Franks* hearing, which is a hearing conducted when a defendant makes a substantial preliminary showing that a false statement was included by the affiant in the warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, and the false statement is necessary to the finding of probable cause.

The defendant has the burden of making this preliminary showing of falsehoods in the affidavit before he is entitled to a hearing. *Franks v. Delaware*, 438 U.S. 154, 155-56, 171, 98 S.Ct. 2673, 57 L.Ed.2d 667 (1978).

With regard to the .avi files, Sutherlin complains that providing evidence based on the contents of the .avi files requires that these files be opened, "an act even Houdini would find challenging." Nonetheless, he contends that this "neither mitigates nor indemnifies counsel" for failing to open them.

In order to discredit the warrant, a defendant must show that an affidavit contained a false statement which is the product of deliberate falsehood or reckless disregard for the truth and that the remaining truthful portion of the affidavit is insufficient to support a finding of probable cause. *Moreno v. Dretke*, 450 F.3d 158, 169 (5th Cir. 2006). In this case, the purported falsehoods put forth by Sutherlin consist largely of relatively minor inconsistencies between what Moore told Weber and Moore's testimony at trial. None of these inconsistencies could be grounds for a *Franks* hearing because the purportedly false statements were made by Moore, not by Weber. *See Franks*, 348 U.S. at 171-72 (noting that the deliberate falsity or reckless disregard must be that of the affiant, not a non-governmental informant); *accord, United States v. Arrington*, 618 F.2d 1119, 1125 (5th Cir. 1980) ("proof that the informant's information was false would not have vitiated probable cause for the warrant.")

Sutherlin also contends that according to Weber, she reviewed video surveillance and observed a truck very similar to Sutherlin's turn into the apartment complex where Moore lived at 3:16 am on the morning of the assault. He asserts that in her affidavit, Weber stated that she later saw the truck leave, but she does not mention seeing the truck leave in her report or her later testimony. The fact that Weber did not specifically testify to seeing the truck leave does not show that a false statement was made, much less that House was ineffective for not seeking a *Franks* hearing or that Sutherlin would likely have prevailed had such a hearing been held. Sutherlin has failed to establish that counsel's actions in this regard fell below an objective standard of reasonableness or that but for counsel's actions, the result of the proceeding would probably have

been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense to such an extent that there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different); *Del Toto v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007). Sutherlin's objection on this point is without merit.

Sutherlin next complains of ineffective assistance in that counsel did not open the .avi files, but fails to show what information this would have elicited. As the Magistrate Judge correctly concluded, a defendant who alleges a failure to investigate on the part of counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000). Sutherlin did not do so, and his claim that opening the files would be impossible is unavailing. This objection is without merit.

B. Voir Dire Issues

During voir dire, House read the indictment and asked if an individual were convicted of these offenses, could the jurors consider the minimum sentence. The trial court stated that House could not ask that question as to the indictment language because it was an improper commitment question and House changed the question so as to ask about "a similar offense." House then asked if there was anything which had been discussed that a juror would like to discuss at the bench instead of in front of anyone. After one juror responded to this question, House stated that he looked forward to working with everyone and closed his voir dire. (Docket no. 12-9, pp. 68-69). Sutherlin argued that House erred in that the question the attorney originally asked was an improper commitment question, and once counsel was admonished for tainting the panel, he abdicated voir dire altogether.

The Magistrate Judge determined that Sutherlin failed to show he had suffered any prejudice from counsel's asking an improper question. Although Sutherlin complained that juror no. 49 was "manifestly biased" with regard to sentencing and should have been struck for cause or had a peremptory challenge used on him, the Magistrate Judge stated that this juror testified on individual voir dire that he could still consider the minimum sentence of five years "contingent on the circumstances of the case." (Docket no. 12-9, pp. 80-83).

Sutherlin argues that the record showed a degree of prejudice by no. 49 that counsel felt the need to address, just not severe enough to "further the judge's ire." This objection lacks merit. The record shows that while this juror initially appeared to have answered a question about the range of punishment in an ambiguous manner, he then testified that he could give five to 99 years, that five years "was still in the running," and that he could consider a five-year sentence "contingent on the circumstances of the case." This testimony was sufficient to rehabilitate the juror under Texas law. *Cooks v. State*, 844 S.W.2d 697, 710 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 927 (1993). Sutherlin's objection on this point is without merit.

Sutherlin contends that the reading of the indictment at voir dire prejudiced the jury because the indictment contained prejudicial language including retaliation, murder, moving and secreting the victim away, and the use of a box cutter. According to Sutherlin, this rendered the jury unable to hand down the minimum punishment. In his memorandum of law, he states as follows:

> Here, JP [petitioner] argues highly prejudicial inflammatory language within the indictment; specifically, Count V which included such language as retaliation, murder, moving and secreting the victim away. Bear in mind that Count V is kidnapping. Apart from the prejudicial language, counsel failed to object to this harmful language where murder and retaliation are not essential elements of the charged crime and where no evidence existed to support such. It's fair to state that had this motion to quash been denied by the trial court, it would constitute an error.
>
> That being addressed, JP concedes that standing alone, this issue would never pass constitutional muster; however, this is brought to bear due to the ramifications of this failure during the voir dire process. This is the first error which proves to be just the beginning of an avalanche of errors rising to constitutional dimensions.

Although Sutherlin complains in his objections that the Magistrate Judge did not mention the indictment's reference to a box cutter, the Magistrate Judge discussed Count V, the one to which Sutherlin pointed; this count did not include any mention of a box cutter. Although Sutherlin asserts in his objections that the reference to a box cutter in the indictment was "inflammatory," the evidence at trial showed that the victim was threatened with a box cutter. (Docket no. 12-10, p. 225).

Count V of the indictment reads as follows:

> Furthermore, the defendant Johnny Paul Sutherlin, with the intent to commit another felony, like sexual assault, retaliation, murder, or to facilitate the flight after committing one of those acts, did inflict bodily harm on the victim, or violate or abuse the victim sexually or terrorize the victim and during this, intentionally and knowingly abducted the victim, by restricting the victim's movements, without her consent, so as to substantially interfere with her liberty, by moving her from one place to another, or by confining her with the intent to prevent her liberation, by secreting her in a place she is not likely to be found.

Sutherlin contends that the reading of the indictment at voir dire caused the members of the jury panel to be unable to hand down the minimum punishment, but offers nothing to substantiate this allegation. Furthermore, as the Magistrate Judge noted, the indictment was also read to the jury at the start of the trial. If the language of the indictment would itself cause the jury to be unable to hand down the minimum punishment, Sutherlin offers no reason why it would not have the same effect when read at the start of trial. He has shown no harm from the fact that House read the indictment during voir dire and his objection on this point is without merit.

While it is true that the trial judge twice commented that House had "tainted the panel" by reading the particulars of the indictment during his voir dire, the Magistrate Judge concluded that Sutherlin suffered no harm from the alleged taint because the end result of reading the indictment to the panel was that jurors who could not consider a minimum sentence were identified and removed from the jury. Sutherlin did not identify any demonstrably biased panel members who were seated on the jury.

Sutherlin's objections assert that the trial judge conducted individual voir dires for some of the panel members as opposed to declaring a mistrial. He states that of those panel members

8

individually voir dired, three were selected to serve on the jury, leaving nine that were still tainted but were never subjected to meaningful voir dire by House or to curative voir dire by the trial judge. As a result, he argues that prejudice must be presumed.

The Fifth Circuit has held that a juror is biased if his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). There are two recognized variations of bias - actual bias, which exists when a juror fails to answer a material question honestly on voir dire and a correct response would have provided a valid basis for a challenge to cause, or implied bias (also called presumed bias). Examples of implied bias may include revelations that a juror is an employee of the prosecuting agency, that the juror is a close friend of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction. *See Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003); *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009). A belief that the defendant and his brothers have a reputation for breaking into houses is not sufficient to show bias, nor is the fact that four jurors in a defendant's trial sat through the voir dire of a co-defendant's separate trial for the same crime, even though the co-defendant's strategy was to pin the blame on the first defendant. *Solis*, 342 F.3d at 398-99; *Willie v. Maggio*, 737 F.2d 1372, 1377 (5th Cir. 1984).

Sutherlin offers nothing to suggest that any particular juror harbored either actual or implied bias against him. Instead, he simply presents bald and conclusory allegations, which are insufficient to sustain a claim of ineffective assistance of counsel. *Narcisse v. Cain*, civil action no. 6:12cv2741, 2014 WL 6388567 (W.D.La., November 13, 2014), *citing Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

Nor has Sutherlin set out a claim with regard to the presence of the allegedly biased jurors. The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative

evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 and n.2 (5th Cir. 1983); *see Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). This objection is without merit.

Furthermore, Sutherlin has failed to show that the improper commitment question tainted the jury panel to the extent that a mistrial was required. The Fifth Circuit has stated in the context of a federal criminal prosecution that "we are unaware of any decision by the Supreme Court or any federal appellate court that has reversed a district court because it allowed commitment questions on voir dire in violation of the Due Process Clause or the Sixth Amendment." *United States v. Fambro*, 526 F.3d 836, 848 (5th Cir. 2008). This objection is without merit.

Sutherlin further asserts that counsel "abandoned" voir dire. As stated above, the record shows that counsel asked the improper commitment question and was admonished by the trial court that he could not do that. He then asked about "not this specific case, but anybody convicted of a similar offense, those that could not consider five years." Counsel followed this by asking "is there anything that has been discussed that you would like to discuss with the judge at the bench in front of everybody else?" This was the last question asked by counsel of the panel, although as the Magistrate Judge observed, extensive questioning of the panel took place prior to defense counsel's voir dire.

Even assuming counsel terminated voir dire prematurely, the Magistrate Judge determined that Sutherlin failed to show prejudice. While Sutherlin pointed to juror no. 49 as one who was unsuccessfully challenged for cause but upon whom a peremptory challenge was not used, the record shows that juror no. 49 testified that he could consider the full range of punishment contingent on the circumstances. Thus, there was no legal basis for a challenge for cause. *Cooks*, 844 S.W.2d at 710; *see also Virgil v. Dretke*, 446 F.3d 598, 609 (5th Cir. 2006). Sutherlin's contention that all of the jurors were tainted so as to deprive him of a fair trial is conclusory and cannot sustain an ineffective assistance of counsel claim. Nor has he shown that but for counsel's failure to use a peremptory challenge on juror no. 49, the result of the proceeding would probably have been different. This objection is without merit.

More generally, Sutherlin has not demonstrated that the result of the proceeding would probably have been different had counsel asked more questions of the panel. *See Neville v. Dretke*, 423 F.3d 474, 482-83 (5th Cir. 2005) (petitioner claiming ineffective assistance of counsel at voir dire must show that the result of the proceeding would probably have been different absent the allegedly ineffective conduct); *Cordova v. Johnson*, 993 F.Supp. 473, 531 n.327 (petitioner failed to identify any member of the jury which decided his case whom he now believes could have been successfully challenged for cause had trial counsel done a better job). Sutherlin has failed to show any harm from counsel's alleged "abdication" of voir dire and his objection on this point is without merit.

C. Objecting to the Indictment

Sutherlin asserts that counsel should have objected to prejudicial language within the indictment, specifically noting the language concerning moving or secreting the victim with regard to a kidnapping charge set out in Count V, above. He argues that had counsel objected to this prejudicial language, there is a reasonable probability that the language would have been removed. The Magistrate Judge observed that the references to murder and retaliation in the indictment appeared simply to be examples of "another felony" which could support a conviction for aggravated kidnapping. To the extent that Sutherlin challenges the validity of the indictment itself, the Fifth Circuit has explained that if the highest criminal appeals court of the state has held, either expressly or implicitly, that the indictment was sufficient under state law, the federal habeas inquiry is at an end. *Alexander v. McCotter*, 775 F.2d 595, 598-99 (5th Cir. 1985); *see also Williams v. Collins*, 16 F.3d 626, 637 (5th Cir.), *cert. denied* 115 S.Ct. 42 (1994). Where the Court of Criminal Appeals of the State of Texas refuses to hear a direct appeal and denies a writ of habeas corpus sought on the ground that the indictment is insufficient, that Court has implicitly held that the indictment is sufficient. *Alexander*, 775 F.2d at 599. The denial of Sutherlin's state habeas petition amounts to an implicit holding that the indictment was sufficient under state law.

Furthermore, the language about which Sutherlin complains was deleted and did not appear in the charge to the jury. Sutherlin offers nothing to suggest that the language of the indictment was so prejudicial as to deprive him of a fair trial even though the jury was not instructed on that allegedly prejudicial language nor authorized to convict him on that language. The Fifth Circuit has held that the jury is presumed to follow the instructions of the trial court. *Galvan v. Cockrell*, 293 F.3d 760, 766 (5th Cir. 2002). Nothing in the record rebuts the presumption that the jury here followed the instructions of the trial court and limited its consideration to matters contained in the charge. Nor has Sutherlin shown that had counsel objected to the indictment prior to trial and had this language removed, the result of the proceeding would probably have been different. Sutherlin's objection on this point is without merit.

D. Cumulative Error

Sutherlin asserted that counsel committed cumulative error. The Magistrate Judge determined that Sutherlin failed to show either deficient performance by trial counsel nor any cumulative errors approaching constitutional dimensions. Sutherlin objects to this conclusion, stating "the errors by counsel were so egregious that no reasonable attorney would have engaged in such. In fact, trial counsel's errors worked to Sutherlin's actual and substantial disadvantage to such a degree that his trial, in whole, was fundamentally unfair."

The Magistrate Judge correctly stated that federal habeas corpus relief cannot be granted where the alleged cumulative errors are not of a constitutional dimension. *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). Sutherlin has not pointed to any cumulative errors rising to constitutional dimensions. The Fifth Circuit has held that "there is no precedent supporting the idea that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in *Strickland*." *United States v. Thomas*, 724 F.3d 632, 648 (5th Cir. 2013). Conclusory assertions are insufficient to sustain a claim of cumulative error. *Id.*; *see also Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (in the absence of specific

demonstrated error, a defendant cannot by definition show that cumulative error of counsel deprived him of a fair trial). This objection is without merit.

E. Evidentiary hearing

Sutherlin contends that he is entitled to an evidentiary hearing. In determining whether to grant an evidentiary hearing, the court must consider whether such a hearing would enable the applicant to prove factual allegations which, if true, would entitle him to relief. If the record refutes the petitioner's factual allegations or otherwise precludes habeas corpus relief, the court is not required to conduct a hearing. *Norman v. Stephens*, 817 F.3d 226, 235 (5th Cir. 2016).

The Magistrate Judge correctly determined that Sutherlin did not point to any factual dispute in the record which would entitle him to habeas corpus relief if proven. In his objections, Sutherlin simply asserts in a conclusory manner that "had counsel acted professionally, all of the evidence against Sutherlin would have been suppressed" and that "Sutherlin has alleged facts that if proven true would entitle him to relief." Conclusory allegations are insufficient to require either discovery or an evidentiary hearing. *Murphy v. Johnson*, 205 F.3d 809, 817 (5th Cir. 2000). Sutherlin's objections on this point are without merit.

F. The Motion to Stay and Abate

Although Sutherlin filed a motion which he styled as a motion to stay and abate the proceeding along with his habeas petition, the Magistrate Judge denied this motion by separate order. The Magistrate Judge observed that the stay and abeyance procedure allows the court to stay a federal habeas petition containing both exhausted and unexhausted claims and hold it in abeyance while the petitioner returns to state court to pursue the unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). However, Sutherlin did not request this relief; instead, he simply asked that the Court excuse the exhaustion requirement entirely and allow him to proceed directly on his unexhausted claims upon a finding that the exhaustion requirement would be futile.

The Magistrate Judge determined that the request to proceed on the unexhausted claims lacked merit because Sutherlin failed to show extraordinary circumstances justifying such relief or that the pursuit of available state court remedies would have been futile. The Magistrate Judge also determined that to the extent Sutherlin's motion could be construed as requesting a stay and abeyance under *Rhines*, even though he did not request this relief, the motion lacked merit because Sutherlin did not show good cause for the failure to exhaust nor that his claims were not plainly meritless.

Sutherlin's objections to the Magistrate Judge's Report contain an attached objection to the denial of his motion to stay and abate. This objection argues that the Magistrate Judge incorrectly recited the dates that he sought and received the documents which formed the basis of his untimely filed addendum in the Court of Criminal Appeals; in fact, Sutherlin asserts that he filed his state habeas petition on June 27, 2016, and then filed a motion for abeyance in the state court on August 15, 2016. This motion was denied on August 30, 2016. He states that he received his file containing the facts forming the basis of his unexhausted claims from his attorney on November 16, 2016.

Sutherlin does not address the fact that the motion purportedly for stay and abeyance which he filed in federal court did not actually request a stay and abeyance, but rather the excusal of the exhaustion requirement. Nor did he discuss the Magistrate Judge's conclusion that he failed to show justification for either excusing the exhaustion requirement or for a true stay and abeyance. The Magistrate Judge correctly denied Sutherlin's purported motion to stay and abate. Sutherlin's objections are without merit.

**IV. Conclusion**

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review,

the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Petitioner's objections are overruled and the Report of the Magistrate Judge (docket no. 15) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled application for the writ of habeas corpus is **DISMISSED WITH PREJUDICE** for failure to exhaust state remedies. It is further

**ORDERED** that the Petitioner Johnny Paul Sutherlin is **DENIED** a certificate of appealability *sua sponte*. It is further

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED.**

**So Ordered and Signed**
**Oct 18, 2018**

_____
Ron Clark, Senior District Judge